You may proceed, counsel. Thank you, your honor. Are you agreed as to how you will share your ten minutes? I just met co-counsel, so I'll go first. I'll take five minutes. Sounds agreeable. Would you please reset the clock? You may proceed, counsel. Thank you. Errol Stamler on behalf of Thiffer Skannal. This case has to deal with the prior juvenile conviction which eliminated Mr. Skannal from benefit of the safety valve, which would have reduced his mandatory minimum sentence of 120 months down to 70 months or less. My argument is essentially there was no sentence imposed by the juvenile court. The government's argument that the four-year maximum term is an indeterminate sentence. The minor was not sentenced. However, the minor was not sentenced to camp community placement for four years. That's on government's brief, page 9. Under 117. Well, the juvenile court judge authorized that he could be held in physical confinement for a period not to exceed four years. And then the initial placement was in camp community. Right. No, I disagree. Well, that's what I read here. Minor placed in camp community placement program. Short term, whatever that means. And then it says minor may not be held in physical confinement for a period not to exceed four years. That's the juvenile justice jurisdiction time. That's under section of the Welfare and Institutions Code 726. And I'll quote that for my argument. In any case in which the minor is removed from the physical custody of his parents or guardian as a result of an order for boardship made pursuant to section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under jurisdiction of the juvenile court. That four years has to do with jurisdiction is not a sentence imposed upon a minor. As I made in my argument in my brief is that the California Juvenile Code permits determinate sentences. 1170, the California Penal Code abolished indeterminate sentences. And that was the main argument of the governments in their brief is that the four years is an indeterminate sentence. That's been abolished in the state of California. Okay, but I thought the rule was that if we need to determine whether this is a sentence of over 60 days, and that is crucial, that you look at the maximum in an indeterminate sentence to determine that. So if the maximum is over 60 days, that's it. Not true? Not true because we have a bright line in this jurisdiction, the Ninth Circuit. The bright line is essentially U.S. versus Mendoza-Morales. I cite that on page 10 of my brief. Also, 4A.1.2B of this United States Sentencing Guidelines clearly states sentence imposed, the maximum sentence imposed. Morales holds that it's the sentence pronounced, not the length of time of actually served. In this case, there was no term imposed upon the minor. The state can impose camp community placement and say you're committed for six months, you're committed for a year, you're committed for 30 days. They did not do that in this case. It is blank. And the bright line is there was no sentence imposed. Now, they could have held him in physical confinement up to four years. Well, that's the jurisdiction. But just the way you read that statute, it authorized that he could be placed in confinement for more than four years. And that also is coextensive with the jurisdiction of the juvenile court. Well, as a juvenile, when he's awarded the court, he's under the protective custody of the court not to exceed four years, and he could be placed in physical confinement for not more than four years. Fine, but he wasn't sentenced to that. He wasn't sentenced to that. If they're going to do – if we're going to apply these draconian ways for safety valve and sentence, there has to be an imposition of a sentence. In this case, there was no imposition. In every single juvenile case in the state of California states that to maintain the jurisdiction over the minor. It's not a sentence. It's jurisdiction over the minor. In this particular case, he could have, for instance, and I gave an example, is that a minor could be sentenced to California Youth Authority. In that case, they're sentenced to a determinate sentence. Counsel, you're down to five minutes. I better – I'll reserve if I have any time. All right. Thank you. Good morning, Your Honors. Jerry Seis for Appellant Thornton. Mr. Seis. The issues in Mr. Thornton's case are basically two. First, whether the district court erroneously awarded three criminal history points to Mr. Thornton, therefore making him ineligible for the safety valve. I'm sorry. A little closer to the mic. There you go. Okay. The first issue is whether the district court erroneously awarded three criminal history points to Mr. Thornton, therefore making him ineligible for the safety valve exception to the mandatory minimum. That issue was actually thoroughly briefed. The second issue is the Booker violation in which the district court erroneously believed that the sentencing guidelines regarding criminal history points was mandatory and therefore requiring a limited release. This is one of these rare cases where he received a mandatory minimum sentence, correct, of 120 months. He received a mandatory minimum sentence. What possibly could the district court do on remand? That's wrong. Why is that wrong? I mean, isn't the district court supposed to impose a mandatory minimum if the three points still remain? If you'll let me, I'll be glad to amplify. All right. Mr. Thornton pled guilty pursuant to a plea agreement. The plea agreement considered expressly that Mr. Thornton was going to apply for the safety valve exception to the mandatory minimum. That's what this whole case is about. Because the district court erroneously awarded three criminal history points, Mr. Thornton was therefore no longer eligible for the safety valve exception. Let's assume for a moment that we disagree with you, that the district court erred in imposing three. Well, if you disagree with me that the district court erred, then all we're really left with is the book of violation of limited remand. But why would we why would we want to do a limited remand when all the district court could possibly do would be to impose 120, 20 months? He couldn't go below that. If the mandatory minimum is valid, then there's no it would be useless to remit. But there is a safety valve exception. Right. And to the limited remand. And that safety valve exception was expressly considered by the parties, Mr. Thornton and the government, when they entered into the plea agreement. Mr. Thornton entered into the plea agreement with the express belief that he was going to be applying for the safety valve exception and that he was eligible for the safety valve exception. What happened was that the pre-sentence report erroneously awarded three criminal history points based on application note five to USSG section 4A1.2. He was convicted of a DUI of driving. He was not convicted of a DUI. What was he convicted of? He was.  Driving with the blood alcohol level of .08. No. He was. He was convicted of violating California Vehicle Growth Section 23152B. Right. That's driving with the blood alcohol greater than. Yes.  23152A is driving while intoxicated. That's the sentence for driving with a blood alcohol level of greater than .08. The sentence that was given to him. It was a statutory sentence. It's the same as under subdivision A, isn't it? No. It is not the same as subdivision A. The California courts have made it clear that there is a vast difference between subdivision A and subdivision B. Subdivision A, if he had been convicted of subdivision A, there'd be no question but that he should have been awarded three criminal history points. But he wasn't convicted of A. He pled guilty. You don't think B is. Similar to A. The California Supreme Court and the California Court of Appeal have made it crystal clear that it's not similar to A. They've said, and I've cited that extensively in the briefs, the California Court of Appeal in the Hamilton v. Gourley at page, pages 16 to 17 in the brief said that of crucial importance here is that to obtain a conviction under section 23152 subdivision B, the prosecution has no burden to prove that the defendant's driving ability was impaired. The trial, in fact, need not determine whether a defendant was driving under the influence, only whether he had the specified blood alcohol level. A conviction for driving with a .08 percent blood alcohol level thus neither entails nor requires a finding of impairment. Now, application note 5 to 4A1.2 says conviction for driving while intoxicated or under the influence and similar offenses are counted. This is not a similar offense. We understand your argument, counsel. Your time for your side has expired. We'll now hear from the government. Good morning. May it please the Court. I'm Assistant United States Attorney Carol Peterson. I represent the United States in this matter. With the Court's permission, I would like to address the issues just raised by Mr. Seiss with regard to Mr. Thornton at the outset. As Mr. Seiss mentioned, there are two issues before this Court, the first being whether or not being convicted of driving with a blood alcohol content of .08 percent or higher is a similar offense. Not the same offense, but a similar offense to driving under the influence. What about these California cases that Mr. Seiss has been bringing to our attention? The California cases, including Hamilton v. Gorley and also the case of People v. Bransford, all found that Section 23152B was not the same offense. Not the same offense. And the Court is not required in this case to make that determination whether or not it's the same offense. Only whether it's similar. Only whether it's similar. That's right, Your Honor. And as Mr. Seiss pointed out, he is correct that this section was enacted so that the government or the district attorney's office would only have to prove a straight blood alcohol level of .08 percent or higher. The district attorney's office would not have to prove that, in fact, the person was intoxicated. However, when the Court looks to the legislative history of this particular section, it's clear that this section was enacted to accomplish the same sorts of goals that driving under the influence was, to protect the public from people who drink alcohol, get behind the wheel of a car, and place themselves, the people in their cars, and others in jeopardy. So I would submit to the Court that it is similar. I would also note that by the terms of the sentencing guidelines themselves, there's no way that this particular vehicle code section can qualify as a minor traffic infraction because under 1B1.9, the Application Note 1 states that an infraction is any offense for which the maximum authorized term of imprisonment is not more than five days. And in the present case, Mr. Thornton's conviction resulted in a sentence of 36 months summary probation, a $1,663 fine, or 17 days county jail, far in excess of the five days prescribed by that particular note. So based on all the foregoing, I would submit that the District Court properly calculated this as a similar offense, incorporating it into Mr. Thornton's criminal history. With regard to the safety valve issue, as the government presented to the Court in its 28J letter, the government believes there's really nowhere for the District Court to go if this Court finds that that conviction was properly incorporated in his criminal history. The safety valve is statutory, obviously, 3553F, and whether or not the District Court felt like post-Booker, perhaps the defendant's criminal history was overrepresented and perhaps should have fallen in Criminal History Category 1, it still would not have the discretion to make a departure under that statutory term. So we would submit that Booker does not apply to statutory mandatory minimum sentences in this particular case. With regard to Mr. Scanal's argument, the issue in this particular case is whether or not the District Court properly applied criminal history points at sentencing based upon Mr. Scanal's prior conviction, a juvenile conviction for possession of marijuana for sale. And the record in this case demonstrates that the Court that handled Mr. Scanal's case made explicit findings that the defendant's offense was a felony and they should not be held in physical confinement for more than four years. And the sentencing guidelines for A1.2b instruct sentencing courts to look at the sentence that was actually pronounced, not the length of time actually served. Now, Mr. Stambler has argued that, in fact, this was not a sentence that was actually prescribed, that it was more of an indeterminate sentence. I disagree with his contention. But even if that is true, even if he is correct about that, I believe that the case of United States v. Birch, which is a Tenth Circuit case, addresses his issue because, in that case, the Court found that although the actual time served should not be considered the sentence of confinement, so the time that the person actually spent in confinement isn't an indicator of the assessment of their criminal history points, the time served is evidence of the actual time served in cases where the sentence is indeterminate. In this case, Mr. Scanal spent four months, or 120 days, in actual confinement in juvenile camp facilities. And so even if the Court were to say, yes, we think the four years is indeterminate, we don't think we can rely on that as an indicator, which the government submits the Court should rely on, but if the Court were not, the fact that he did serve 120 days is an indicator under Birch to this Court that, in fact, he did serve greater than the 60 days and it was properly counted under his criminal history. In this minute order from the juvenile court, in item 24, it says, mine are placed in the camp community placement program, and there's a box that's checked short-term. But, you know, I looked high and low to figure out what short-term meant. Does the government know what that means? I can't help the Court with that, unfortunately, but it is clear from reading these cases and from looking at this law generally that the entire point of the juvenile sentencing system is rehabilitation of the particular juvenile with particular care given to the probation officers and other people who are directly in contact with the juvenile to see if the goals of that confinement have been met. Is the juvenile rehabilitated? Is the juvenile able to successfully go back out into the public and live a law-abiding life? And so I think that while the Court recognized that this was a serious offense that Mr. Scanal had committed in its eyes and set forth a felony term of not to exceed four years, the whole point of the juvenile justice system was to leave it to the discretion of the underlying juvenile confinement supervisors to determine when he had actually met the goals of that confinement. So the four years is both the maximum time that he could be held in confinement, physical confinement, along with the outer reaches of the juvenile court's jurisdiction over him as a ward in the court. I don't necessarily know that that was the case. I believe that in California, unlike some other states that only permit you to confine a juvenile until the age of 21, in California you can confine someone up until the age of 25, I believe. And so courts that have looked at this particular issue, including United States v. Davis and United States v. Birch, have held that in the cases of indeterminate sentencing where there is no outer reach such as the four years that we have here, you can also look at how long the juvenile could have been held under the juvenile justice system in order to determine what the maximum sentence would have been. And I don't believe it's relevant here. Theoretically here, because I don't understand all the juvenile court statutes yet, but it appears that he could have been held in physical confinement up to four years. That's right. And that was not the outer reaches of the statute. I believe that particular statute, when sentencing an adult, has a statutory maximum of 10 years. So arguably the court could have gone as high as 10 years in this, but instead set a specific cap of confinement of four years. And I will submit on Mr. Scanal's case unless the court has any further questions. No further questions. Thank you. The case just argued will be submitted for decision.
judges: Hall, O'scannlain, Paez